IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LORELEI TYRE-RAMIREZ and
EDWARD VINCENT RAMIREZ,

        Plaintiffs,

v.                                                      No. 2:23-cv-00932-KWR/JHR

JANET RAMIREZ and THE
ESTATE OF ANTONIO REY
RAMIREZ,

        Defendants.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Plaintiffs Lorelei Tyre-Ramirez and Edward Vincent Ramirez's motion for summary judgment on Counts 1–3, Doc. 1 (complaint), and Defendant Janet Ramirez's counterclaim, Doc. 5 (answer and counterclaim). Doc. 20. Having reviewed the parties' briefs and the applicable law, the Court finds that Plaintiffs' motion is well-taken, and therefore, is **GRANTED**.

### BACKGROUND

In 2010, Ellen Marie Ramirez and Antonio Rey Ramirez divorced. *See* Doc. 20-1, Ex. 2. The final divorce decree contained a provision allocating community property:

> [Antonio Ramirez] acknowledges that [Ellen Ramirez] has paid ALL community debts (credit cards and federal and state taxes due) during time of separation. In lieu of financial compensation to [Ellen], [Antonio] agrees to add to the deed on the family home the names of BOTH children—Lorelei and Vincent—when [Ellen's] name is removed at time of finalization of divorce. If family home (at 910 W. 12th Street, Silver City) is sold prior to [Antonio's] death, proceeds will be divided EVENLY among the three people: Tony, Lorelei, and Vincent. Children's names will be on house deed as "POD"—meaning they will inherit the house, and not be liable for taxes, insurance, etc. until [Antonio's] death.

1

Doc. 20-1, Ex. 2. However, Ellen Ramirez's name was never removed from the deed and remains on the record as the one-half legal owner of the property. *See* Doc. 26, Ex. 16; Doc. 20-1 at 4, ¶ 23. The children's names were never added to the deed. *See* Doc. 26, Ex. 16.

In 2016, Anthony Ramirez married Janet Ramirez. Doc. 22 at 1, ¶ 2; Ex. B. In 2020, after Janet and Anthony paid off debt to an escrow company and made other improvements to the home using community funds, Anthony quitclaimed his interest in the property to himself and Janet as joint tenants. Doc. 20-1, Ex. 4; Doc. 22 at 2, ¶¶ 5–6. Anthony died in 2023. Doc. 20-1 at 2, ¶ 5. Janet now claims that she is the rightful owner of the property, *see* Doc. 5 at 4–5, and remains in possession (and the children out-of-possession) of the house. Doc. 20-1 at 4, ¶ 21. Only after their father's death did Lorelei and Edward Vincent Ramirez become aware of the divorce decree establishing their interest in the disputed property. *See* Doc. 20-1 at 6, Exs. 14 & 15.

In 2023, the children—Lorelei and Edward Vincent Ramirez (the Plaintiffs)—sent a legal demand to Janet Ramirez (the Defendant) containing a copy of the divorce decree and quitclaim deed. Doc. 20-1 at 4, ¶ 20. Plaintiffs thereafter instituted an action against Defendant to quiet title under N.M. Stat. Ann. § 42-6-1 (Count 1), for ejectment under N.M. Stat. Ann. § 42-4-1 (Count 2), and for unjust enrichment (Count 3). *See* Doc. 1 at 4–5. Plaintiffs now move for summary judgment on all claims. Doc. 20 at 1–2.

**DISCUSSION**

I.  **Legal Standard**

   A. Jurisdiction

The Court has subject matter jurisdiction over the case. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants and for the amount in controversy to

exceed the sum or value of $75,000. 28 U.S.C. § 1332(a)(1); *see also Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). Plaintiff Lorelei Tyre-Ramirez and Plaintiff Edward Vincent Ramirez are residents of Texas. Doc. 20 at 2. Defendant Janet Ramirez and the Estate of Antonio Rey Ramirez are residents of New Mexico. Doc. 20 at 2; *see also* 28 U.S.C. § 1332(c)(2). The value of the property in controversy exceeds $75,000. Doc. 20 at 2.

"When deciding diversity cases, federal courts apply the law of the state in which they are sitting." *Tucker v. R.A. Hanson Co.*, 956 F.2d 215, 217 (10th Cir. 1992) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Accordingly, the Court applies New Mexico law.

B. <u>Summary Judgment Standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (citation and internal quotations omitted). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Id.* (citation and internal quotations omitted).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (citation and internal quotations omitted). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (citation and internal quotations omitted). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). "[A]t the summary judgment stage[,] the

3

judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.     Analysis

### A.  Quiet Title

The Court finds that Plaintiff has established the absence of a genuine dispute of material fact and are entitled to judgment as a matter of law on Count 1 of the complaint, Doc. 1, and on Defendants' counterclaim, Doc. 5. *See* Fed. R. Civ. P. 56(a). "An action to determine and quiet the title of real properly may be brought by anyone having or claiming an interest therein . . . in an action brought to foreclose the said mortgage, mortgage deed, trust deed or such other written instrument, whether in or out of possession of the same, against any person or persons, claiming title thereto, or parcel or portion thereof, or lien thereon, whether such lien be a mortgage or otherwise." N.M. Stat. Ann. § 42-6-1.[1] "A party seeking to quiet title to realty must recover upon the strength of his or her own title and not on the claimed weakness of his adversary." *Martinez v. Martinez*, 945 P.2d 1034, 1037 (N.M. Ct. App. 1997) (citation omitted).

The Court finds that there is no genuine dispute of material fact and Plaintiff is entitled to a judgment as a matter of law on Count 1 for four reasons. First, Plaintiffs have a present interest in the disputed property. *See infra* section II.A.1. Second, Defendant does not have an interest in the disputed property because she is not a bona fide purchaser. *See infra* section II.A.2. Third, even if Defendant is a bona fide purchaser, she had constructive notice of the divorce decree and

---

[1] "[A] plaintiff out of possession may maintain in the federal courts a suit to quiet title . . . ." *Corman v. Cree*, 100 F.2d 486, 487 (10th Cir. 1938) (citations omitted).

therefore is not protected by the recording statute. *See infra* section II.A.3. Finally, the defense of laches does not apply. *See infra* section II.A.4.

### 1. *Plaintiffs have a present interest in the disputed property.*

The Court finds that Plaintiffs have a present interest in the disputed property. In February 2010, the court overseeing Ellen Ramirez and Antonio Ramirez's divorce proceedings entered a final decree of dissolution of marriage. Doc. 20–1, ¶ 15. At issue is the following clause:

> In lieu of financial compensation to [Ellen Ramirez], [Antonio Ramirez] agrees to add to the deed on the family home the names of BOTH children—Lorelei and Vincent—when [Ellen's] name is removed at time of finalization of divorce. If family home (at 910 W. 12th Street, Silver City) is sold prior to [Antonio's] death, proceeds will be divided EVENLY among the three people: [Antonio], Lorelei, and Vincent. Children's names will be on house deed as "POD"—meaning they will inherit the house, and not be liable for taxes, insurance, etc. until [Antonio's] death.

Doc. 20-1, ¶ 17; Ex. 3. The Court finds that the divorce decree granted Plaintiffs with a vested remainder in the disputed property, and at the time of Antonio's death, grants Plaintiffs with ownership of the property in fee.

"[A] divorce decree . . . is fundamentally a stipulated judgment." *Nationstar Mortg. LLC v. Tapia*, 534 P.3d 264, 270 (N.M. Ct. App. 2023). "A stipulated judgment, otherwise known as a consent judgment, 'is a negotiated agreement between the parties that is entered as a judgment of the court.'" *Id.* (citation omitted). "Stipulated judgments are similar to a judgment because they are entered and enforceable as a judgment; however, it is like a contract because its terms and conditions are reached by the mutual agreement of the parties." *Id.* (cleaned up) (citation omitted). "As a general rule, a stipulated judgment is not considered to be a judicial determination, but a contract between the parties." *Id.* (citation and internal quotations omitted). "[B]ecause a consent judgment is founded on contract, it is to be interpreted according to the parties' intentions . . . ." *Pope v. Gap, Inc.*, 961 P.2d 1283, 1288 (N.M. Ct. App. 1998).

5

The Court concludes that the divorce decree directed the creation of (and the parties intended to create) a life estate in Antonio Ramirez and a vested remainder in Plaintiffs. *See vested remainder*, *Black's Law Dictionary* 1293 (6th ed. 1990) ("An estate by which a present interest passes to the party, though to be enjoyed *in futuro*, and by which the estate is invariably fixed to remain to a determinate person after the particular estate has been spent."). The decree attached no conditions to Plaintiffs' right to receive the property after Antonio's life estate ends. *See* Doc. 20-1, ¶ 17; Ex. 3 ("[The children] will inherit the house, and not be liable for taxes, insurance, etc. until [Antonio's] death.").[2] Thus, when Antonio died, Plaintiffs became presently entitled to the property in dispute. *See generally* N.M. Stat. Ann. § 47-1-12 ("In all actions relating to real estate, where it becomes necessary for the conveyance of the same by either party to the action the court may enter a decree, which of itself shall operate as a good and sufficient conveyance of the real estate in question . . . .").

Defendant argues that Plaintiffs have "no interest" in the property because Anthony never added their names to the deed, and that Anthony did not violate the decree because he was not required to amend the deed until a condition precedent occurred—that is, until Ellen Ramirez removed her own name from the deed (which never occurred). *See* Doc. 21 at 3. But in an action for quiet title, whether Antonio added Plaintiffs' names to the deed itself is not material: Equitable ownership is sufficient in an action to quiet title. *See Rock Island Oil & Refining Co. v. Simmons*, 386 P.2d 239, 240 (N.M. 1963) (citations omitted); *Garcia v. Garcia*, 808 P.2d 31, 38 (N.M. 1991).

---

[2] The Court reaches this conclusion notwithstanding the preceding stating that, "[i]f the [property] is sold prior to [Antonio's] death, proceeds will be divided EVENLY among the three people: [Antonio], Lorelei, and Vincent," Doc. 20-1, Ex. 3. The Court interprets the decree to restrict the conveyance of any interest beyond Antonio's life to a non-buyer; the sentence stated above serves as an exception to Antonio's inability to transfer title to allow the sale of the property to a buyer willing to pay market price for the property.

Here, the divorce decree made Plaintiffs the equitable owners of the property at the time of Antonio's death (and remaindermen while Antonio was still alive). *Compare equitable owner*, *Black's Law Dictionary* 539 (6th ed. 1990) ("One who is recognized in equity as owner of the property, because real and beneficial use and title belong to him, even though bare legal title is invested in another."), *with legal owner*, *Black's Law Dictionary* 896 (6th ed. 1990) ("The legal owner has title to the property, although the title may actually carry no rights to the property other than a lien.").[3] In other words, Antonio remained both the equitable and legal holder of a life estate but only a legal owner of any future interest in the property. In short, while Plaintiffs never obtained legal title to the property, at the time the divorce decree was executed, they became present, equitable co-owners of the future interests in the whole property.

> 2. *Defendant does not have a present interest in the disputed property because she is not a bona fide purchaser.*

As discussed above, Plaintiffs have a present interest in the property in dispute. *See supra* section II.A.1. At the same time, the Court finds that Defendant lacks a present interest in the property in dispute because she is not a bona fide purchaser. Whether Defendant is a bona fide purchaser is significant for two reasons.

---

[3] The New Mexico Supreme Court has explained:

> In law the effect of a contract whereby the owner agrees to sell and another agrees to purchase a designated tract of land, the vendor remains the owner of the legal title to the land . . . [b]ut, in equity the vendee is held to have acquired the property in the land and the vendor as having acquired the property in the price of it. The vendee is looked upon and treated as the owner of the land and the equitable estate thereof as having vested in him. He may convey it or encumber it, devise it by will and on his death it descends to his heirs and not to his administrators. The legal title is held by the vendor as a naked trust for the vendee and any conveyance by him to one not a bona fide purchaser for value is ineffective to pass title.

*Mesich v. Bd. Of Comm'rs of McKinley Cnty.*, 129 P.2d 974, 976–77 (N.M. 1942). Here, Antonio is akin to a vendor who contractually agreed to transfer property to another but never fulfilled his promise to convey. *See Conway v. San Miguel Cnty. Bd. Of Educ.*, 282 P.2d 719, 727 (N.M. 1955).

*First*, as discussed above, Antonio Ramirez was merely the legal (not equitable) owner of any future interest in the disputed property. *See supra* section II.A.1. As a result, he was to hold that interest in trust for Plaintiffs—the equitable owners—and "any conveyance by him to one not a bona fide purchaser for value is ineffective to pass title." *See Mesich*, 129 P.2d at 976–77.

*Second*, even if Antonio validly created a concurrent estate with Defendant, Defendant's title claim (from the 2020 deed) is superior to Plaintiffs' earlier-in-time interest (from the 2010 divorce decree) in the disputed property only if she is protected by the New Mexico recording statute. *See Cano v. Lovato*, 734 P.2d 762, 770 (N.M. Ct. App. 1986); N.M. Stat. Ann. § 14-9-1. Defendant (the subsequent transferee) is entitled to the property if and only if she is a bona fide purchaser, meaning an "innocent purchaser[] for value without notice of the unrecorded [instrument]." *Jeffers v. Doel*, 658 P.2d 426, 428 (N.M. 1982).

The Court concludes that Defendant is not a bona fide purchaser—and thus does not have a superior claim of title—because Defendant did not purchase title to the property. Defendant argues that she qualifies as a bona fide purchaser because she used marital funds for home improvements. Doc. 21 at 11. Defendant further argues that she is a purchaser because she used marital funds to pay down debt to an escrow company with the expectation that, after the escrow deed was released to Anthony, Anthony would convey to her an interest in the property. *See* Doc. 21 at 11–12.

A "purchaser" is a person who "obtains *title* to real estate in consideration of the payment of money or its equivalent." *Arias v. Springer*, 78 P.2d 153, 159 (N.M. 1938) (emphasis added); *see also Valencia v. Lundgren*, 1 P.3d 975, 978 (N.M. 2000) ("[A] person can qualify as a purchaser under the recording statue *if and only if* he has invested money or money's worth in *consideration for the title* to real property." (emphasis added)). Put simply, a purchaser (as used in

8

the recording statute) is someone who pays consideration to acquire *title*; spending money on improvements or other items is insufficient to make someone a purchaser.

Based on this definition, Defendant is clearly not a "purchaser" as a matter of law. While Defendant made payments to the escrow company to release the deed to Anthony, the record does not establish that she paid consideration *to Anthony* to acquire title in the property.[4] This definition also makes clear that Defendant spending money on improvements is insufficient to become a purchaser; while these expenditures may be material in a claim of unjust enrichment, it has no bearing on whether a person has title to a property.

> 3. *Even if Defendant is a bona fide purchaser, she had constructive notice of the divorce decree.*

Even if Defendant is a bona fide purchaser, she had constructive notice of the divorce decree. The New Mexico recording statute provides that, "[a]ll . . . other writings affecting the title to real estate shall be recorded in the office of the county clerk of the county . . . in which the real estate affected thereby is situated." N.M. Stat. Ann. § 14-9-1. Here, while the divorce decree is a "writing affecting the title to real estate" and was entered in Grant County, *see* Doc. 20-1, Ex. 2, where the property in dispute is located, *see* Doc. 20-1, Ex. 4, it was not recorded as a property record in the county clerk's office. *See* N.M. Stat. Ann. § 14-9-4. A bona fide purchaser of property without notice of an unrecorded writing takes the property free of that interest. *See* N.M. Stat. Ann.

---

[4] In an affidavit, Defendant Janet Ramirez states that, "[b]ecause of my financial investment into the house (both by paying the debt and remodels), Anthony agreed to put my name on the deed to the property." Doc. 22, Ex. B. To the extent this statement is used to show that Defendant made payments in consideration for title, the Court will not consider this statement because it is inadmissible hearsay. *See Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) ("[A]t summary judgment courts should disregard inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form . . . . To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." (emphasis in original)).

§ 14-9-3 ("No deed, mortgage or other instrument in writing not recorded . . . shall affect the title or rights to . . . any purchaser . . . without knowledge of the existence of such unrecorded instruments.").

The Court concludes that, despite the divorce decree not being recorded in accordance with N.M. Stat. Ann. § 14-9-4, Defendant had knowledge of the existence of the divorce decree, and as a result, is not protected by the New Mexico recording statute. A bona fide purchaser is treated as having constructive knowledge of an unrecorded writing affecting property if the purchaser has "[k]nowledge of such facts as ought to put a prudent [person] upon inquiry as to the title." *See Hunt v. Ellis*, 201 P. 1064, 1065 (N.M. 1921). "Once a prospective purchaser obtains knowledge of facts that trigger a duty to inquire about the title, that purchaser must perform a 'reasonably diligent investigation'—one that 'would lead to the knowledge of the requisite facts by the exercise of ordinary diligence and understanding.'" *City of Rio Rancho v. Amrep Southwest Inc.*, 260 P.3d 414, 422–23 (N.M. 2011) (citing *Hunt*, 201 P. at 1065).

Here, Defendant admitted that at the time of the conveyance, she "knew Ellen Marie Ramirez's name was still on the property" and that the property had been the subject of Antonio and Ellen's divorce. *See* Doc. 22 at 2, ¶ 11; Ex. B. While Defendant claims to have been unaware of the contents of the divorce decree, the Court concludes that these facts would have caused a reasonably prudent person to inquire into the title, and that a reasonably diligent investigation would have led to the discovery of the divorce decree. Indeed, if Defendant had taken the routine step of employing a title examiner to ensure that the title was clean of encumbrances, she would have secured a copy of the divorce decree, which would have made Defendant aware of Plaintiffs' interest in the property. *See, e.g.*, *Watkins v. Watkins*, 922 F.2d 1513, 1515 (10th Cir. 1991) (explaining that a bona fide purchaser "was on constructive notice of any defects in the ex-

husband's title that were contained in the divorce decree," even though the decree was unrecorded, because "[t]o establish title in the husband, the title examiner would have to secure a copy of the divorce decree.").

In sum, because Defendant is charged with constructive notice of the contents of the divorce decree, she cannot rely on the recording statute for safe harbor.

    4. *The defense of laches does not apply*.

The Court finds that the defense of laches does not apply. "The doctrine of laches prevents litigation of a stale claim where the claim should have been brought at an earlier time and the delay has worked to the prejudice of the party resisting the claim." *Garcia*, 808 P.2d at 38 (citing *Cave v. Cave*, 474 P.2d 480, 485 (N.M. 1970)). "The defense of laches is not favored, and it should be applied sparingly." *Id.* at 39 (citation omitted).

> The elements that must be proved to establish laches are: (1) Conduct on the part of the defendant, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) *delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit*; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred.

*Baker v. Benedict*, 587 P.2d 430, 433 (N.M. 1978) (citing *Cave*, 474 P.2d at 485–86) (emphasis added).

The Court finds that Plaintiffs did not delay asserting their property rights because they became aware of the divorce decree establishing their right to the disputed property only after Antonio's death in 2023. *See* Doc. 20-1 at 6, Exs. 14 & 15. Plaintiffs instituted this action the same year. *See* Doc. 1. Before gaining knowledge of the contents of the divorce decree, Plaintiffs had no reason to think that they were entitled to the property and therefore would have no reason to

11

institute a suit. And even if Plaintiffs knew of the divorce decree, there is nothing establishing that they knew Defendant would claim title to the property until after Antonio's death.

In sum, because all the elements needed to establish laches are not present, it provides no defense to Plaintiffs' action to quiet title.

B. Ejectment

As established above, Plaintiffs have superior title and are entitled to summary judgment on their action to quiet title. *See supra* section II.A. Plaintiffs also move for summary judgment on the action for ejectment under N.M. Stat. Ann. § 42-4-1. Doc. 20 at 2, 16–17. "The action of ejectment may be maintained in all cases where the plaintiff is legally entitled to the possession of the premises." N.M. Stat. Ann. § 42-4-1; *see also Burke v. Permian Ford-Lincoln-Mercury*, 621 P.2d 1119, 1121 (N.M. 1981) ("The very foundation of the right to maintain an action of ejectment, both at common law and under statutory law of New Mexico, is the plaintiff's right to the possession of the premises."). Accordingly, because Plaintiffs have superior title and are entitled to possession of the premises, the Court finds that Plaintiff is entitled to judgment as a matter of law on Count 2. *See* Fed. R. Civ. P. 56(a).

C. Unjust Enrichment

As established *supra* section II.A, summary judgment on Plaintiffs action for quiet title is proper. But even if Plaintiffs are not entitled to a judgment as a matter of law on their action for quiet title, Plaintiffs have established the absence of a dispute of material fact and that they are

entitled to judgment as a matter of law on Claim 3 of the complaint, Doc. 1. *See* Fed. R. Civ. P. 56(a).[5]

To prevail on a claim for unjust enrichment, Plaintiffs must show that "(1) [Defendant] knowingly benefitted at [Plaintiffs'] expense"[6] and "(2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. 2000) (citing Restatement (First) of Restitution, § 1); *see also Amrep Southwest*, 260 P.3d at 428–29. "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must refuge in equity." *Sanchez*, 3 P.3d at 698–99. In this case, there is no contractual relationship between Plaintiffs and Janet Ramirez, and as a result, Plaintiffs have no action in contract against her.

Both elements are met here. First, Defendant knowingly received a benefit when she took title to the property in dispute. Defendant was aware that Antonio conveyed a portion of his interest in the property, and receiving this interest provides a clear benefit. *See* Restatement (First) of Restitution, § 1, cmt. b ("A person confers a benefit upon another if he gives to the other possession or some other interest in . . . land . . . or in any way adds to the other's security or advantage."). And this benefit was at Plaintiffs' expense: She received an interest that Plaintiffs were entitled to. Second, Defendant retaining title to and enjoyment of the property—and Plaintiffs losing out on that benefit—would be unjust and inequitable. At the time the divorce decree was entered, Antonio

---

[5] The Court does not decide the extent to which Defendant was unjustly enriched. The amount of money Defendant spent on the property, including community funds used for home improvements, is relevant to damages on the unjust enrichment action. *See generally Sanchez*, 3 P.3d at 699 ("As a general matter, the limitations are premised on the bedrock principle that it makes little sense to remedy one wrong by inflicting another.").

[6] To clarify: This element requires only that the Defendant knows she received a benefit, *not* that she knows the benefit is being received at another's expense.

13

Ramirez was allowed to remain living at the property but was stripped of his ability to convey any interest beyond his life to anyone in place of compensating Ellen Ramirez (who paid all community debts while separated). *See* Doc. 20-1, Ex. 3 ("[Antonio] acknowledges grossly inequitable division of community property at the time of separation. In lieu of further compensation, terms as listed [in the clause at issue] will be accepted by [Ellen]."). It is unjust to validate (and allow Defendant to retain the benefit of) such a transfer, especially when the intended beneficiaries of the agreement only found out about their vested interest after it was already conveyed.

## CONCLUSION

The Court finds that there is no genuine dispute of material fact and that Plaintiffs are entitled to a judgment as a matter of law on all claims, Doc. 1, and the counterclaim, Doc. 5. *See* Fed. R. Civ. P. 56(a). Accordingly, Plaintiffs' motion for summary judgment, Doc. 20, is **GRANTED**.

It is **SO ORDERED**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE